[S. F. No. 4776. In Bank.—September 20, 1907.]

JOHN N. LOFSTAD, Petitioner, v. F. J. MURASKY, Judge of the Superior Court of the City and County of San Francisco, Respondent.

ESTABLISHMENT OF TITLE — McENERNEY ACT — LOSS OF RECORDS — ACTUAL POSSESSION NECESSARY.—In a proceeding under the act of June 16, 1906, commonly known as the McEnerney Act, to establish and quiet the title to real property in case of loss or destruction of public records, the superior court only has jurisdiction when the affidavit required by the act shows that the party bringing the proceeding was in the actual, as contradistinguished from the constructive, possession of the property, title to which was sought to be established by him.

ID.—WHAT CONSTITUTES ACTUAL POSSESSION.—The actual possession essential to give the court jurisdiction of such proceeding must be an appropriation of the land by the claimant such as will convey to the community where it is situated visible notice that the land is in his exclusive use and enjoyment, an appropriation manifested by either inclosing it, or cultivating it, or improving it, or adapting it to such uses as it is capable of. It must be such an actual possession as sections 322 and 323 of the Code of Civil Procedure requires in order to sustain title by adverse possession when such title is founded upon a written instrument.

ID.—CONSTITUTIONAL LAW—SPECIAL LEGISLATION.—So construed, the act is not unconstitutional as being special legislation, in that it divides property-owners into two classes,—one having actual possession of their property, and the other only constructive possession, —without any natural intrinsic or constitutional basis for the distinction.

APPLICATION for a Writ of Mandate directed to the Judge of the Superior Court of the City and County of San Francisco. F. J. Murasky, Judge.

The facts are stated in the opinion of the court.

Edward C. Harrison, for Petitioner.

Page, McCutchen & Knight, for Respondent.

LORIGAN, J.—This is an application for a writ of mandate.

The petitioner commenced an action under the provisions of what is familiarly known as the McEnerney Act (Stats. Extra Session 1906, p. 78) to establish and quiet his title to certain lots in the city and county of San Francisco, being part of Outside Land Blocks, Nos. 270, 299, and 701.

This act, which creates a system of judicial procedure for the establishing of title to real property where the public records which would otherwise establish it have been destroyed, provides that an action may be brought under it by any person who claims an estate in real property and "who by himself or his tenant, or any other person holding under him is in the actual and peaceable possession thereof," and requires that the complaint filed shall be accompanied by an affidavit which shall show the character of the estate which the plaintiff claims in, and the possession he has of, the real property described in the complaint.

The affidavit filed by the petitioner with his complaint stated that he was the owner in fee simple of the said property, having derived title thereto under sundry conveyances to him made in 1897 and 1898, and duly recorded in the recorder's office of the city and county of San Francisco, and as to the character of his possession of said property declared that "there is no physical possession of said premises by said petitioner for the reason that the plaintiff has not been able to occupy the same personally, or to find any person to whom he can lease the same, and the same are uninclosed and vacant; that the only possession thereof is therefore the constructive possession which accompanies the legal title in it; that this constructive possession of plaintiff has never been disturbed by any claim or any occupation, intrusion or trespass of any

CLII Cal.—5

other person and said plaintiff therefore alleges the same to be both actual and peaceable within the meaning of the 'Act to provide for the establishment and quieting of title to real property in case of loss or destruction of public records,' approved June 16, 1906.''

Upon the filing of his complaint and affidavit the petitioner applied to the respondent, as judge of the superior court in which the action was pending, for an order, required by section 4 of the act, designating the newspaper in which publication of summons in the suit should be made. The respondent refused to make the order, and petitioner now applies to this court for a writ of mandate requiring him to do so.

The refusal of the respondent to make the order in question was based upon the ground that the character of the possession of petitioner of said property, as stated in his affidavit, was not such as to give the superior court jurisdiction to proceed in the action or to grant the relief provided for in the act; that the court could only acquire jurisdiction to proceed when the affidavit showed that the party bringing the action was in the *actual* possession of the property title to which was sought to be established by him, and that the affidavit of petitioner showed that he was not in such actual possession, and at most was only in constructive possession, of the property.

We do not think there can be any doubt but that the action of the respondent in refusing to make the order was correct.

The position of the petitioner seems to be, as stated in his affidavit, that because it appears therefrom that he has the legal title to the property, and hence in contemplation of law is in constructive possession of it, and, as there is no adverse claim to the property or any adverse occupancy thereof, he is therefore to be deemed in the actual possession of it within the intent and meaning of the McEnerney Act. This process of reasoning, while possibly warranted by the exigency of the situation confronting petitioner when endeavoring to avail himself of the benefit of the act, is obnoxious to the objection that it obliterates the well-recognized distinction between actual and constructive possession, while at the same time it attempts to force upon a phrase well recognized in law a meaning entirely different from what it usually possesses, and the ordinary meaning of which the legislature is supposed to have understood when it employed it in the act.

It must be assumed that when the legislature required, as a prerequisite to the right to invoke the remedy which it provided, that the party should be in the *actual* possession of real property, it understood the distinction between the legal classes of actual and constructive possession, and that it used the term ''actual possession'' advisedly and as generally understood.

When the petitioner stated in his affidavit that he was not in the physical possession of the property himself or by any one else, and that it was uninclosed and vacant, he showed that he was not in the actual possession under any definition of what constitutes actual possession, and stated himself out of court, unless, as he claims, the further facts stated by him amounted to a showing of actual possession. But that they do not we think it quite apparent. These facts relied on consist of the conveyances by which he acquired the property; that he is the owner in fee simple, and that no person makes any claim to it beside himself, nor is any one in adverse occupancy of it. Treating the affidavit as proof of these facts which it states, and for the purpose of obtaining the order required under the act it must be so treated, it only shows legal title to the property in petitioner, from which it follows, as a fiction of law, that he is constructively in possession of it. The further fact stated by him, that there is no adverse claim or adverse occupancy of the property by any one, does not affect this constructive possession one way or the other. The mere fact that there is no adverse possession of the premises to which one holds the legal title does not make the possession of such holder anything more than a constructive one. It only tends to show that there is no actual possession of it by any one, and hence his constructive possession is undisturbed. For the purpose of this proceeding it does not have the effect of changing petitioner's constructive possession into actual possession within the intent of the act under any possible theory. All the possession he has, even if there be no adverse possession, is constructive possession; the possession which in contemplation of law followed his legal title to the property, while what the act required him to have in order to avail himself of its provisions is actual possession—possession in fact.

While it is true that the act in question is of a remedial nature, and should be liberally construed so as to effect the

purpose contemplated by it, a court is not warranted under the guise of liberal construction in giving to a term or phrase a different meaning than such as it is generally understood to possess. "Actual possession" is a term of well-understood legal meaning, and is used in opposition to the other term "constructive possession" or "possession in law." The distinction between these classes of possession is so well defined and so generally recognized that it is hardly necessary to proceed to any great extent in pointing it out. In a general way it may be said that constructive possession is that which exists in contemplation of law without actual personal occupancy of the property; such a possession as in contemplation of law proceeds from the vesting of the paramount title or follows in the wake of legal title, or, as more exactly defined, "constructive possession, or possession in law as it is sometimes called, is that possession which the law annexes to the legal title or ownership of property when there is a right to the immediate actual possession of such property, but no actual possession." (28 Am. & Eng. Ency. of Law, 2d ed., 239.) This is the possession, and the only possession, which it appears from the affidavit of petitioner he had of the land described in his complaint,—constructive possession which the law connects with his ownership of the legal title. Opposed to this constructive possession is actual possession, the character of the possession which the act requires in order that its provisions may be availed of. What constitutes such possession was early defined by this court, and some of the cases doing so are found quoted from in *Brumagim* v. *Bradshaw*, 39 Cal. 24-44. It is there said: "In *Coryell* v. *Cain* (16 Cal. 573), which is a leading case in this state on that point, we define actual possession to be 'a subjection to the will and dominion of the claimant, and it is usually evidenced by occupation, by a substantial inclosure, by cultivation, or by appropriate use, according to the particular locality and quality of the property.' In *Plume* v. *Seward* (4 Cal. 96), [60 Am. Dec. 599], it is said that to maintain an action on the ground of prior possession, 'there must be an actual *bona fide* occupation, a *possessio pedis*, a subjection to the will and control, as contradistinguished from the mere assertion of title and the exercise of casual acts of ownership, such as recording deeds, paying taxes,' etc. In *Wolf* v. *Baldwin* (19 Cal. 313), in stating what kind of 'actual occupa-

tion' was required under the Van Ness Ordinance, the court says it was a 'possession which is accompanied with the real and effectual enjoyment of the property. It is the possession which follows the subjection of the property to the will and dominion of the claimant to the exclusion of others; and this possession must be evidenced by occupation, or cultivation, or other appropriate use, according to the locality and character of the particular premises. . . . It must, in other words, be an open, unequivocal, actual possession—notorious, apparent, uninterrupted, and exclusive—carrying with it marks and evidences of ownership, which apply in ordinary cases to the possession of real property.' "

We do not think it necessary to further refer to the authorities defining actual possession. They are agreed that in order to constitute such possession there must be an appropriation of the land by the claimant such as will convey to the community where it is situated visible notice that the land is in his exclusive use and enjoyment; an appropriation manifested by either inclosing it, or cultivating it, or improving it or adapting it to such uses as it is capable of. The rule announced in the authorities cited, which is the general rule in respect to what constitutes actual possession, is embodied in our code (Code Civ. Proc., secs. 322, 323) as the one which shall prevail when accompanied by payment of taxes (Code Civ. Proc., sec. 325), in order to sustain title by adverse possession when such title is founded upon a written instrument, and we see no reason why it should not be applicable as defining the actual possession required to be had in order to invoke the benefit of the McEnerney Act.

It is insisted by the petitioner that the actual possession required by that act is not to be construed as strictly as it is in the authorities defining the phrase for the purpose of constituting adverse possession under the statute of limitations referred to, as the reasons and objects of the two statutes are different. But the rule as to what constitutes actual possession when title by adverse possession is asserted under the statute is no different from the general rule which obtained before the statutory enactment, so that the statute lays down really no stringent rule upon the subject. It simply embodies the general rule. Nor do we discover any purpose disclosed by the term as used in the McEnerney Act which would justify us in

making the distinction suggested, or any reason why we should define actual possession as used in that act to mean something different from actual possession when asserted to support a claim of title by adverse possession. What constitutes actual possession in respect to such claim, or whenever the meaning of the term has been in question, has been sharply and clearly defined by the authorities in this state, and, as we say, is really the general rule on the subject, and in the absence of any disclosed intention on the part of the legislature to give it a different meaning than its general one we cannot assume that it so intended. We are referred to no authorities in this state where, when the meaning of the term actual possession was under consideration, any different meaning was given to it than the authorities cited by us disclose. It may be said, too, in passing, as accentuating the proposition that when the legislature used the term actual possession it employed it as generally defined and to require possession in fact, that it declares in the act that such possession shall be by the party or his tenant or other person. Possession by tenant or other person could have no relevancy except as applied to actual possession. Aside from this, we do not discover anything in the affidavit of petitioner which could invoke making a distinction, if it were permissible. His affidavit states no facts showing that he is in the actual possession under the most liberal rule that might be indulged in short of defining actual possession to be synonymous with constructive possession, which, of course, would be absurd. We are therefore of the opinion that the actual possession of property required to be had in order to give the court jurisdiction under the McEnerney Act must be such an actual possession as is defined by the general rule, and embodied in the code sections referred to, as necessary to sustain title by adverse possession if maintained and continued for the period required by law. All petitioner shows in his affidavit is that he had constructive possession of the property. Before he is entitled to avail himself of the benefit of the McEnerney Act he must be in the actual possession of the property as that term is defined by the authorities cited, ánd the fact that he is in actual possession must be stated or shown in his affidavit. And upon the hearing before the court for the purpose of obtaining the decree authorized under the act he must prove actual possession of the property at the time of

filing his complaint and making his affidavit as it is defined by these authorities.

It is further claimed by petitioner that if the phrase "actual possession" is to be given the construction which we here give it, then the act is unconstitutional as special legislation in this, that it divides property-owners into two classes,—one having actual possession of their property, the other only constructive possession,—without any natural intrinsic or constitutional basis for the distinction. This is not a new point. This act was attacked in *Title etc. Co.* v. *Kerrigan,* 150 Cal. 289, [88 Pac. 356], as unconstitutional on all the grounds to which it was deemed vulnerable in that respect, and the point made now was made there, but was not pressed, probably because on reflection it was deemed untenable, as we are satisfied it is.

The petition for the writ is denied.

Henshaw, J., Angellotti, J., Sloss, J., McFarland, J., Beatty, C. J., and Shaw, J., concurred.