[S. F. No. 5537.   In Bank.—August 14, 1912.]

VIRGINIA VANDERBILT, Respondent, v. ALL PERSONS
CLAIMING ANY INTEREST IN OR LIEN UPON
THE REAL PROPERTY HEREIN DESCRIBED, OR
ANY PART THEREOF, Defendants; OWENS &
UNGER, Defendant and Appellant.

QUIETING TITLE UNDER MCENERNEY ACT—PROOF OF ACTUAL POSSESSION
BY PLAINTIFF ESSENTIAL TO JUDGMENT.—In an action to quiet title
under the so-called McEnerney Act (Stats. Ex. Sess. 1906, p. 78),
to certain lots in the city and county of San Francisco, the public
records of which in the office of the county recorder were destroyed
by the fire of April, 1906, proof of the actual possession by the
plaintiff of the land in question at the time when the action was
commenced and when the affidavit accompanying it was made, is
necessary to the rendition of a judgment for the plaintiff.

ID.—ACTUAL PHYSICAL OCCUPANCY NOT ALWAYS ESSENTIAL.—In order
to constitute such actual possession, it is not necessary that actual
physical occupancy by the owner or by a tenant must be shown in
all cases, nor is it necessary that the evidences of possession or
occupancy such as under normal and ordinary conditions are re-
quired, and as pointed out in the opinion in *Lofstad* v. *Murasky*, 152
Cal. 64, must be made to appear in every case.

ID.—SUFFICIENT SHOWING OF ACTUAL POSSESSION—LOT COVERED BY
RUINS OF FORMER BUILDING—PROPERTY IN CHARGE OF WATCHMAN.—
In an action commenced five months after such fire, to quiet title
to a lot formerly completely covered by a five-story brick building
which had been destroyed by the fire, it is held, that the actual pos-
session of the plaintiff at the time of the commencement of the
action was sufficiently shown to meet the requirements of the stat-
ute, by the evidence as to the then physical condition of the ruins
of the building, and the fact that the property was in charge of
a watchman and caretaker of the plaintiff, who visited it daily for
the purpose of looking after it, although neither the plaintiff nor
any one for her was then in actual physical possession of the prop-
erty.

ID.—ERRONEOUS ADMISSION IN EVIDENCE OF ABSTRACT OF TITLE—ERROR
NOT CURED BY CHANGE IN STATUTE PENDING APPEAL.—Under sec-
tion 1855a of the Code of Civil Procedure, as it existed prior to
its amendment in 1911, it was erroneous to admit in evidence in
such action, in proof of the plaintiff's title, an abstract of title made
up and certified after the destruction of the public records; and
the fact that pending an appeal by an adverse claimant from the

judgment for the plaintiff the section was so amended, as to permit of the introduction of such evidence (Stats. Ex. Sess. 1911, p. 64), would not cure the error nor authorize the appellate court to disregard it.

ID.—RETROACTIVE OPERATION OF STATUTE.—Retroaction is never allowed to a statute unless required by express legislative mandate or unavoidable implication.

ID.—MISTAKEN PAYMENT OF TAXES—LAND IN OCCUPANCY AND POSSESSION OF OWNER—TITLE NOT AFFECTED.—While the owner in fee of land remains in the actual occupancy and possession thereof, the payment of taxes thereon by a third person, merely as the result of an erroneous assessment, did not affect the title of the owner, or debar her of her right to have it quieted.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Houghton & Houghton, for Appellant.

Tobin & Tobin, and George A. Clough, for Respondent.

MELVIN, J.—After a decision by the district court of appeal a rehearing was granted in this case in order that we might further examine the two principal questions, which were as follows: 1. Was the evidence of plaintiff's actual possession of the property sufficient? and 2. Was the abstract of title offered and accepted in evidence by the trial court properly admissible under the provisions of section 1855a of the Code of Civil Procedure? As we agree with the answer of the district court of appeal to the first question, we adopt a part of its opinion upon that subject, as follows:—

"This is an action to quiet title under the so-called Mc-Enerney Act (Stats. Ex. Sess. 1906, p. 78), to certain lots in the city and county of San Francisco. Plaintiff had judgment, from which and from the order denying its motion for a new trial, defendant corporation, Owens & Unger, appeals.

"The action concerns several different parcels of real estate, only one of which is involved in this appeal, referred to as parcel 6 in paragraph IV of the complaint, described as follows: 'Commencing at the point of intersection of the north-

erly line of Pacific Street with the westerly line of Front Street; thence running northerly along the westerly line of Front Street one hundred and forty-seven feet five inches; thence at right angles westerly and parallel with the northerly line of Pacific Street, one hundred and thirty-seven feet and six inches; thence at right angles southerly and parallel with the westerly line of Front Street one hundred and forty-seven feet five inches to the northerly line of Pacific Street; thence easterly along the northerly line of Pacific Street one hundred and thirty-seven feet six inches to the point of commencement.'

"Defendant, Owens & Unger, in its answer, claimed 'an easement appurtenant of and for a right of way over and upon a portion of the said real property in said complaint described,' as follows: Then follows the description of a strip of land, 'being the northerly nine (9) feet eleven (11) inches of the real property described in the said complaint herein,' sometimes referred to herein as strip A. In an amended answer said defendant pleaded sections 318, 319 and 325 of the Code of Civil Procedure in bar of the action, alleging that neither the plaintiff nor any of her grantors have paid all or any of the taxes, state, county and municipal, which have been levied and assessed upon the said strip of land. At the close of the testimony defendant was granted leave to file a second amended answer 'to conform to the proof offered on the trial of this case.' By this amendment defendant pleaded adverse possession of a tract of land 128 feet 7½ inches on Front Street by 137 feet 6 inches running north. It is then alleged that: 'Of the land above described' a strip 12½ inches fronting on Front Street 'taken from the south end of the land hereinbefore described is a part of the land described in the sixth paragraph or description of land in the complaint herein.' It is next and lastly, alleged that 'for more than ten years prior to the commencement of this action, the whole of the fifty vara lot of land situate on Broadway and Front Street in the city and county of San Francisco, and described as follows: (137 feet 6 inches along Front Street and of like depth), and the buildings and improvements on said land have been each and every year of said ten years and for each and every year since this action was commenced, assessed to the defendant Owens & Unger, and its grantors'

and by them paid 'and that at no time within said period has plaintiff paid any of the taxes levied and assessed on said land or any part thereof.'

"Plaintiff, as we have seen, claims a frontage of 147 feet 5 inches on Front Street, which thus overlaps the lot claimed by defendant, 9 feet 11 inches. The complaint was filed September 21, 1906."

Here follows a catalogue of appellant's specifications of alleged error, and then the opinion thus proceeds:

"1. The first point made in the attack upon the findings and judgment is, that proof of actual possession when the action is brought is necessary to the jurisdiction of the court and to the rendering of judgment for plaintiff and is insufficient; citing *Lofstad* v. *Murasky*, 152 Cal. 64, [91 Pac. 1008]. In that case the court said: 'In order to constitute such possession there must be an appropriation of the land by the claimant such as will convey to the community where it is situated visible notice that the land is in his exclusive use and enjoyment; an appropriation manifested by either inclosing it, or cultivating it, or improving it or adapting it to such uses as it is capable of.' The court also held that there must be such actual possession as is required under the statute 'to maintain title by adverse possession when such title is founded upon a written instrument.' It was also held that this same possession 'must be stated or shown in his affidavit,' and 'upon the hearing before the court for the purpose of obtaining the decree authorized under the act he must prove actual possession of the property at the time of filing his complaint and making his affidavit as it is defined by these authorities.'

"The averments of actual possession both in the complaint and the affidavit in its support are sufficient.

"It is claimed by plaintiff that James G. Fair, plaintiff's testate, acquired the property in controversy in 1889, and witnesses testified that in 1890 or 1891, Fair built a five-story brick building covering the entire lot now claimed by plaintiff; that the north wall was up to or against the south wall of the building formerly on the lot at the corner of Broadway and Front Street, or if not quite to that wall, that the Fair building extended over the entire 147 feet 5 inches along Front Street. Aside from the question of title and addressing ourselves to the question of actual possession at the commence-

ment of the action, it appears from the evidence: That the Fair building was practically destroyed by the earthquake and fire of April 18, 1906, and on September 21 following this action was commenced. Witnesses testified to the then condition of the ruins and it appeared that the building had a basement some seven or eight feet below the level of the pavement on Front Street; that the walls of this basement up to the level of the pavement were intact; that at places the wall of the building was standing several feet above the basement. Witness Brock testified that 'the westerly wall was standing to the height of about three stories, perhaps four, the building was formerly a five-story building—on the north wall there were probably 20 feet of the wall above the street line and foundation'; that in the disaster the walls had fallen into the basement substantially filling it with brick and debris and that the brick had also fallen on the pavement of both Front and Pacific streets; in this mass of material in the basement were the remains of the machinery which had been used by tenants of the building; that plaintiff's agents had a watchman and caretaker of plaintiff's property whose duty it was to visit this and other of plaintiff's property daily and that he did so look after it; that at one point on Pacific Street about 20 feet of the pavement had fallen in and the agents put a fence around that opening to prevent accidents to pedestrians; that plaintiff was not herself nor was any one for her in actual, physical possession of the property at the commencement of the action.

"In the case of *Lofstad* v. *Murasky,* 152 Cal. 64, [91 Pac. 1008], as we understand the facts, the land was open, vacant, unoccupied and unimproved. There was nothing to show to the community that the land had an owner or that there was or ever had been possession of the land by any one except constructive possession and the affidavit and complaint stated that this was the only possession claimed by plaintiff. We do not think the court intended by its decision to hold that actual physical occupancy by the owner or a tenant must be shown in all these cases; or that evidences of possession or occupancy such as under normal and ordinary conditions are required, and as pointed out in the opinion, must be made to appear in every case.

"Without undertaking to say to what extent the condition in which the great fire of April 18 left a building which had occupied a lot, will be satisfactory evidence of actual possession by the owner, within the meaning of the remedial act, we have no hesitation in holding that, in the present case, in view of the facts shown and the fact that the action was commenced so soon after the disaster and so soon after the act went into effect, the requirements of the statute are satisfactorily met.''

The trial court permitted the introduction in evidence of certain abstracts made up and certified long after the fire of April 18, 1906, and based partially upon Edwards's Abstracts of Records or Breviate. Under section 1855a of the Code of Civil Procedure as it existed at the time of the trial, this ruling was erroneous. (*Dahler* v. *All Persons etc., ante,* p. 160, [124 Pac. 995].) It is suggested, however, that section 1855a of the Code of Civil Procedure having been so amended since the trial that the evidence offered in the case at bar would be now admissible, it would be useless to remand the cause for retrial. We do not doubt that the section in its present form would justify the rulings admitting the abstracts if the case were tried now, because section 1855a at present provides that: "When, in any action, it is desired to prove the contents of any public record or document lost or destroyed by conflagration or other public calamity and after proof of such loss or destruction, there is offered in proof of such contents . . . any abstract of title, or of any instrument affecting title, made, issued and certified as correct by any person, firm or corporation engaged in the business of insuring titles or issuing abstracts of titles, to real estate, whether the same was made, issued or certified before or after such loss or destruction and whether the same was made from the original records or from abstracts and notes, or either, taken from such records in the preparation and upkeeping of its, or his, plant in the ordinary course of its business, the same may, without further proof, be admitted in evidence for the purpose aforesaid.'' (Stats. 1911, Ex. Sess., p. 64.) But conceding that now the policy of the law is to admit abstracts in evidence in the court below, does that justify the court in affirming a judgment supported by evidence erroneously admitted at the time of the trial? Section 1855a does not in terms, at least, assume any

retroactive effect, and while it marks a change in legislative policy, it contains no express authority for this court to apply that amended policy to pending appeals.    Appellant, relying upon the plain terms of the section as it existed at the time of the trial, may have omitted to put in all of the proofs of its asserted title.    For aught we know, it may be in possession of other evidence which would have been introduced if the cause had been tried upon the rule which now prevails.    A great injustice might be wrought if appellant were denied the opportunity of offering such proofs.    When a remedy is sought which is not authorized by law, a subsequent statute giving such remedy does not operate on the existing suit. (*Wetzler* v. *Kelly & Co.*, 83 Ala. 443, [3 South. 747].)    Retroaction is never allowed to a statute unless required by express legislative mandate or unavoidable implication.    (*Smith* v. *Lyon,* 44 Conn. 178.)    In *Ex parte Sparks,* 120 Cal. 400, [52 Pac. 717], this language appears: "In regard to acts concerning procedure, the question as to their retrospective operation in general has reference to pending cases.    No case is cited in which it has been held that such law, in the absence of a declared intent, has rendered valid a  proceeding entirely closed before the enactment of the law.".    We find no authority which would justify us in sustaining the judgment because of the change in the statute after the commission of error in admitting the abstracts of title without warrant in the law then in force.

As the case must be again tried, it is unnecessary to discuss in detail the remaining points raised in the court below. One of these relates to the payment for years by defendant and its predecessors of the taxes upon a strip of land adjacent to its building and claimed by plaintiff.    If the new trial shall reveal the fact to be (as the district court of appeal found upon the record before it, composed partly of the incompetent evidence) that plaintiff holds the fee to this strip of land and has occupied it by a portion of her building for many years, and that payment of taxes on it was based not upon any claim of title by Owens & Unger, but upon a mistaken assessment, then such payment would not defeat Mrs. Vanderbilt's right to have her  title to this strip of land quieted.

At the trial objection was made by appellant that plaintiff had failed to give notice, as provided in section 1855a of the Code of Civil Procedure, of the intention to use certain abstracts at the trial. We need not pass upon the bearing which the failure to give such notice might have upon the rulings of the trial court, as this question may be so easily eliminated from the new trial by compliance on respondent's part with all of the requirements of that section of the code.

The judgment and order are reversed.

Lorigan, J., Sloss, J., Shaw, J., Angellotti, J., and Henshaw, J., concurred.

Rehearing denied.